First, if it was the intent of the Legislature to take away the plaintiff's right of possession, the act for that purpose is void. Secondly, it was not the meaning of the Legislature to take away the plaintiff's right of entry. Third, the words of the act do not comprehend the case before us.
First, the Legislature were authorized by the Bill of Rights, sec. 43, "to regulate entails in such a manner as to prevent perpetuities." This gave them no power over estates not entailed; and as to the other estates, every citizen is protected by the 12th and 14th sections: "No freeman shall be disseized of his freehold or deprived of his freehold but by the law of the land," which means, by due process of law, and by the judgment of a court of competent jurisdiction, proceeding by the known and established course of law. In 1785 the Assembly passed an act taking from all persons the right of suing for property sold by commissioners of confiscated estates, and of course the rights of (143) possession which such persons had. The judges declared the act invalid, and in 1786 the Assembly altered it. On that occasion the Legislature concurred at last with the judiciary in the position that the Legislature could not deprive any man of his right to property, or of his right to sue for it. One of the judges illustrated his opinion in this manner: "As God said to the waters, So far shall ye go and no further, so said the people to their Legislature." ASHE, J., deserves for this the veneration of his country and of posterity. *Page 142 
Secondly, it was not the intention of the Legislature to take away the plaintiff's right of entry. The preamble of the act complains of estates tail; the enacting part complains of estates tail, and converts them into fee simple. No design is intimated to meddle with any other estates. Estates tail were of two sorts: those where the tenants had not sold, which are converted into fee simples, and those where he had sold, which were secured to the purchaser by barring the claim of tenant in tail and tenant in remainder. The design was "to do away with entails." Was it essential to the promotion of this design to take away an estate in fee, as the plaintiff's was when the act passed, and to give it to another? The object was to free estates tail from the restrictions which rendered them unfit for a republic. Was it necessary to interfere with an estate already free without the aid of the act? Was it necessary that the purchaser of an estate tail already at an end by the failure of issue should hold it preferably to him who, as tenant in remainder, had become legally entitled to the possession by his entering upon it? Whether the one or the other held, it would not be a perpetuity; and it was of no moment to the public which of them held the lands.
Thirdly, if this act be construed literally it will not embrace the case before the Court; and every act ought to be so construed which tends to divest estates legally vested. 2 Dallas, 316. If it be asked, Who are to be barred? the act answers, Tenants in tail and tenants in remainder. The plaintiff was neither; for he had a fee simple in possession by his entry. If it be again asked, Of what are they to be bared? the act answers, "Of a right of entry to such entailed estate." John Moore's was a right of entry to an estate in fee; no estate tail existed which could be recontinued by entry. Again: against whom were they to be barred? the answer is, Against him who was in the actual possession of the estate tail. Newsome was not in the actual possession of such estate; it was extinct by the death of William without issue. The defeasible estate which Newsome had was actually defeated by John's entry; the possession which Newsome afterwards had was tortious; he was not a purchaser in actual possession of an estate tail when the act passed. The case relied on on the other side, as determined in the courts of this State and in the Circuit Court, were cases where the estate tail (144) actually existed when the act passed. In the present case it had actually ceased and the estate in remainder had become an estate in possession and had been reduced into possession by entry. Let it be remarked that the act in this clause does not give a fee expressly to the purchaser; it declares simply that the conveyance in fee shall bar tenants in tail and tenants in remainder. In the former clause it expressly converts estates tail, not conveyed, into fee simples. If it intended to *Page 143 
legitimate the estate of the purchaser against all persons, why is it not said here, also, that he should hold in fee simple? Why is the phraseology varied and the bar confined to persons of a certain description? Is it not because there might be persons of other descriptions who were not meant to be barred? Was it not because they did not mean to bar any others than tenants in tail and tenants in remainder persons who had not a present right of entry, but a right only in expectancy, dependent upon the death of tenant in tail in the one case, and upon his death without issue in the other? Such rights were subject to the power of the Legislature derived from section 43 of the Bill of Rights; for they were connected with and depended upon estates tail. They had no power over estates and rights legally vested and independent of estates tail. Accordingly they have been careful to use such words as confine the operation of the act to cases within their power — to estates tail, and to rights expectant upon them. These words should not be extended to a case like the present, neither within the power of the Legislature nor within their contemplation, nor within the compass of the terms they have employed. Again, why was the person in whose favor the bar was to operate to be a person in actual possession at the time the act passed? It was because they did not mean to confirm the lands to a purchaser whose possession was legally defeated before the act. If a recovery had been effected by the issue in tail or tenant in remainder against the sale of the tenant in tail, these were legal acts which defeated the estate of the purchaser and were not to be invalidated. Will it be said that if the issue in tail had sued the purchaser from his father who made the purchase after 1777, and had recovered against him before 1784, and had been dispossessed by the purchaser before the act of 1784, that the estate so recovered would be barred by that act? If not, I would ask, is not the estate of the purchaser as completely overturned and defeated by an entry given and allowed of by law as by a recovery at law? They required the purchaser to be possessed of the estate tail — why? Because if that had ceased, right of entry had accrued to the remainderman; and as it was unjust and beyond their power to defeat a recovery or actual entry of the remainderman it was equally so to defeat his right of entry to an estate in fee. If the estate tail continued and existed at the time of the act, the purchaser's was a legal possession. They intended, therefore, to confirm legal possessions, not those gained by (145) tortious dispossession, nor those maintained after the estate tail had ceased. Again, what difference is there between an estate defeated by a recovery or entry, and one liable to be defeated by a present right of entry but unjustly withheld from the true owner? What reason could there be to induce the Legislature to favor him who was liable to be dispossessed by a personal right of entry, more than him who had been *Page 144 
really dispossessed? What reason for favoring the owner who had regained and then lost his possession, more than him who was equally entitled but who had not regained it? They intended no such difference without a cause for making it. They have used terms pointedly calculated to exclude from the operation of the act as well rights of entry already accrued as possession already taken by the remainderman at the time of passing the act, and therefore judgment should be for the plaintiff, John Moore.